Good morning, Your Honors. May it please the Court, I am Charity Manet and I represent Chad Delannoy, the Chapter 7 Debtor and Appellant, and I would like to reserve five minutes if I may for rebuttal. You may, and you may commit to them. Thank you, Your Honors. The way our appeal raised a number of issues, as the Court knows, but I really see it coming down to three critical issues. The first being the issue of whether or not the Bankruptcy Court identified the correct legal rule and applied the law correctly with the issue of privity under California's Law of Issue Preclusion. Our opinion is that the Bankruptcy Court did neither of those things. The Court did not identify the correct legal rule because the Court looked at the issue as it had been framed by the appellee, which basically argued that because the appellee is a valid assignee under judgment, privity therefore exists for purposes of issue preclusion. But that's not what the law focuses the Court on in that analysis. It looks at who the party against whom issue preclusion is being asserted and what was their role, if any, in the prior litigation. Fundamentally, this is an issue of due process. The issue of privity requires that the Court find that there is a unity of interest between the party against whom issue preclusion is currently being asserted and their predecessor in interest, if any. It also requires that their interests be adequately represented and it requires basically a relationship between the parties. We do have a unique set of facts, but I want to tease that question. Your bottom line is, while you're arguing privity and you've mentioned due process, are you arguing that you can never acquire a claim or never bid for appellate rights in a bankruptcy? No, not in this appeal. Certainly not. It happens all the time in bankruptcy. Our argument, we did have that happen here where an appellee purchased the defensive appellate rights and we opposed that and we appealed that ruling when the Court permitted that to happen for a couple of reasons. Partially because of this being foreshadowed by the trustee and the appellee saying this is why we want to do this. Also, based on other issues related to the adequacy of the price and whether there would be a meaningful distribution of creditors. But certainly creditors can do what has happened here and I think that this Court has already said as much recently in the Fridman case that was cited by appellee. But our argument goes a little bit further than that, which is that if you go that route, you get a benefit as a creditor that you can curtail that appeal, you can save that money and it may be a good business decision to do so. But that doesn't mean you can step into the shoes of the debtor in the litigation for purposes of issue preclusion later on. Normally, Mr. Delanoy would be in privity with himself, right? That wouldn't be an issue. But you're saying because his appellate rights got stripped off, that privity is cut off. Is that essentially what you're saying? Yes, and I think there was another case that was cited by appellee and I'm going to botch pronouncing the name, but it's like Boozoglue. Sometimes that can happen where a debtor loses their appellate rights. Let me stop you before you go that way because I want to take you in a slightly different direction. Is that really a problem of privity or is that a problem of whether applying preclusion would be fair in the circumstances, the last element of preclusion? I think it's both because the Holguin case that we cited in our paper says that the privity analysis is done based on who the parties were when the litigation was finally decided. So here, the litigation was finally decided when the Court of Appeals entered its order dismissing the case. But what it did in that order before it dismissed it was to say, Mr. Delanoy is no longer a party to this appeal. Instead, to the clerk, substitute in the appellee here and then dismiss the case. So I think there is certainly, and we made these arguments as to the fairness in public policy considerations, but in terms of privity, I think that it is a privity issue here because at the end of that litigation, Mr. Delanoy was not adequately represented or represented at all. He was basically replaced by the very party who he was opposing in the litigation. But didn't that already happen when he filed his bankruptcy petition? In other words, as soon as he filed his bankruptcy petition, those rights became property of the estate. They're under the control of the trustee. At that point, that's when he really got separated from his appellate rights, right? Well, in this case, yes. When you file the bankruptcy case, all your assets come into the estate and they're subject to administration by the trustee. He did that voluntarily. That was his choice to do that, right? Right, yes. He filed a voluntary petition. But in many cases, appeal rights will sit there on the books and not be pursued, not be sold by the trustee. It doesn't seem to be consistent to say that in those cases, just because the trustee couldn't find a buyer or because the creditor wasn't pursuing this litigation strategy, the debtor can still defend an on discharge ability action based on the outcome of that appeal. But in the case where the trustee happens to find the buyer or the creditor happens to pursue this strategy and pursue it, then the debtor doesn't have the right to defend any longer. Why would that be the case? I mean, somebody's going to have their car sold because it happens to have some equity or it happens to be a nice car or it happens to be a collector's car and somebody else may not because they're driving a beater and nobody wants it. There's all sorts of what ifs in bankruptcy. You've got to assume the risk that everything you have might be subject to liquidation, including your appellate rights. I agree with your honor. I think that is certainly a risk. I mean, obviously, there are a few categories of non-salable interests, but I think in general, it's definitely a foreseeable risk and it's a calculated risk that a debtor has to take in filing the case. It's the tradeoff. However, the losing of rights to do something is not the same as being saddled with nearly a million dollars in non-dischargeable debt merely because there was a sale that was consummated. I think going back to Judge Ferris' question that I don't know I fully answered, yes, you lose your rights. You lose your standing as a debtor to defend an appeal unless you get abandonment in a bankruptcy case. The trustee can take over and assume that litigation. The trustee can sell those rights, but the test under California state law, which is what has to be applied in looking at issue preclusion, looks at who the parties were again when the litigation was finally decided. So here, the trustee wasn't the party, and that's kind of like the Boozoglou case where the rights were still with the trustee when that appeal was dismissed. But here, the rights were no longer with the trustee. They went to another party. That leads to kind of a form over substance issue. If that were the rule, then the smart thing for a party in the position of your judgment creditor in this case would be to say, Mr. Trustee, I'll pay you $7,500 if you'll dismiss this appeal. And then your client's in exactly the same position. The only thing that has happened is the manner in which it's accomplished changes. So I'm not sure that the intervention of a third party buyer is really the distinction you want to make. Well, it's not really the third party buyer distinction that I want to make. It's who that third party actually is and what are their actual interests in terms of when they step into the rights they purchased and asserting those rights, what are their interests? Are they acting as a representative of the debtor? Because you could foresee a case where maybe interests of a debtor and another party, whether or not they're a creditor, are actually aligned, and that creditor, maybe they're going to be jointly liable. Maybe they think they could reverse the judgment that would impact them, and they want to purchase the rights, and they would actually represent the debtor's interest in the appeal. But here, and the trustee sometimes is that person as well, who may step in and say, I actually want to win this thing. And the debtor maybe in those cases should be bound by the outcome. And I think I'm almost done with my ten minutes. You're right at five minutes if you want to reserve your time. I will. Thank you. Thank you. All right, counsel. Let's see, this is Mr. Isaacson. No, this is Mr. Furman. I'm botching this today. This is Mr. Bidna. I apologize. We were talking about everything's harder, and I'm evidencing that right now. Everything's harder in this new format. So please proceed. Not a problem. I can call for a trustee. Good morning, and if it pleases the court, my name is Howard Bidna. I am the attorney for the Delhi Woodlawn Colonial LP. What I would like to do with my 15 minutes is to address the specific issues. Some of the key, a handful really, of the key specific issues that are raised in the appellant's reply brief, one of which was touched on in an appellant's argument a minute ago. From our standpoint, this is a textbook case of issue preclusion and a textbook case of non-dischargeability. The first point I want to make is that the appellant's arguments, the appellant's entire approach to this appeal, is to take issue with every judge who has heard any aspect of this matter. Mr. Bidna, this is Judge Spraker. Can I interrupt? I'm interested in having you respond to Ms. Manet's comments regarding privity. When do you believe the court should measure privity in this matter? Privity is measured at the time that the court of appeal addresses the issue. In this case, the time that the court of appeal dismissed the appeal, which made it final. Did the entity that owned those appellate rights have the same interest to be in privity with the debtor? The answer is no, but that's not the legal requirement, and I'd like to address that, Your Honor. Please do. The argument that has been made, which says that the entity which holds the appeal rights has to have the same interest in the debtor, is not California law. The case that the appellant relies on in their brief is the Gottlieb case, and they cite Gottlieb beginning at page 150 of that opinion for the proposition they're arguing today. But the Gottlieb opinion on the prior page states the rule differently. On page 150 of the Gottlieb opinion, it's 141 Calat 4th, so it would be at 149, it says, the concept of privity refers to a mutual or successive relationship to the same rights of property, comma, or to such identification of interest of one person with another as to represent the same legal rights, et cetera, et cetera. So the legal requirement in California for privity is in the disjunctive. You could have an identification of interest, but that's not required if you have what the very case they rely on says, a successive relationship to the same rights of property. So you believe reading that, that you could have diametrically opposed rights in the continuation of this process and still be in privity? Absolutely, because we have a contract right that the debtor owned, it became an asset of his bankruptcy estate owned by his trustee who had a duty to liquidate it. When he filed the bankruptcy, my client stepped up and bought that. We paid good money for that right. Determinate. Determinate the litigation. And we were very clear with the bankruptcy court. We were clear with the trustee. We were clear with this court when it affirmed that sale order that we intended to dismiss the appeal. Fridman says we could do it. We intended to do it. And so I would note that the privity, we are a successor. We are a contract successor. Claims are bought and sold all the time. We bought the claim from the bankruptcy trustee as the successor to the original owner. We had the right to dismiss that. Do you have any California case that deals with this situation where there is a successor by essentially purchase assignment that has a diametrically opposed interest to the original holder? Your Honor, I believe that our brief cites a number of cases, both state and federal, that hold that a successor in interest under analogous circumstances is in privity for purposes of issue preclusion. I don't believe in the exact circumstance that you are asking. I would also note, Your Honor, that the argument that is being made is essentially an end run around what I believe is already law of the case, which is that the bankruptcy court approved my client's purchase of the sale of the judgment and the sale rights, appeal rights. The FAB approved that and the Ninth Circuit went ahead and denied a stay of that. And I think the argument that the appellant is making is contrary to public policy and particularly to bankruptcy policy. Well, I'm going to stop you there. Gary, I want to just ask one question. As I hear all this and as I've read your document, one thing that concerns me is when you say law of the case, you seem to think that it's a fait accompli that when Judge Smith approved your purchase, you were going to get an issue preclusive summary judgment supporting non-dischargeability. You might have gotten a pig in the poke, frankly. Anytime you go in, the metrics for selling you those rights and the metrics for what happens in non-dischargeability are different. Do you disagree? I don't disagree at all. Anytime you buy an asset, you take a risk. Earlier, Judge Taylor, when you buy a car, maybe the tires don't work, maybe it's got a bad transmission. But we believed under established law that we were a successor. If not, the value to the estate, the value to the trustee will be less. My client may not have purchased and may not have paid the estate money. My client may not have paid as much as they did. It's not as though you were pursuing the appeal as a conservator or a representative of the decedent's estate or one of those roles where you have that true privity, that second prong. You did a financial acquisition. But I think that's form over substance, Your Honor. We could have underwritten the trustee dismissing the appeal form over substance. Well, I'm not saying it's dispositive. I'm just saying it's different. And that comes up in the issue preclusion analysis when we have to apply the public policy prong. Isn't that the place where we would correctly? She had discretion as to whether to apply issue preclusion. I guess what I'm saying is you didn't have any promise she was going to do that. That's correct. All right. So she had discretion as to whether to apply issue preclusion as she does in all cases, correct? Correct. And in considering the arguments that have been made regarding the nature of your involvement, that she's arguing it under privity. I think it more correctly is under public policy would be the place that it was considered. And one thing I don't see is that she ever made any findings regarding the public policy prong. Well, she did talk about no need to relitigate this, that it's already been litigated. And I think that if the court, if we look at the policies, the public policies, we have the same policies that underlie collateral estoppel in general apply here. Preservation of integrity of the judicial system, which avoids inconsistent findings between the state court and the bankruptcy court, public confidence in the court system because there's a belief that the state court is capable of litigating these issues. Promotion of judicial economy, because we've already had one trial. Why should we have another trial simply because the issues are different? And the preventing Woodlawn as the successor in this case, the other policy from harassment by having to relitigate vexatious. And again, I think from a public policy standpoint, it cuts in favor of the argument that I'm making in favor of issue preclusion. Because if there's not preclusion, people are not going to buy these sorts of claims that creditors are going to get less or they're certainly going to pay less money. Do you think we can, to the extent we can't find that quality of findings of the record that exists, can we supply those findings through appellate review? So you're saying you think the record is sufficiently robust that we don't need to remand for that finding? I think that's correct. And I think that your panel, yes, can come to that conclusion and does not need to remand. This court, Judge Smith held two very lengthy hearings on our summary judgment motion addressing all these issues. She analyzed very carefully the state court activities, behaviors, the trial, et cetera, et cetera. And I think that either expressly or certainly impliably, she came to the conclusion that issue preclusion was appropriate and that it satisfied the public policies, including the ones that I specifically laid out. All right. Judge Sprinker, I interrupted you. Do you want to ask your question now? I think you covered it probably more articulately than I could. Thank you, though. I doubt that, but thank you. All right. You may continue. Thank you. And on the other public policy issue, I think the closest thing that we have is that Boogaloo, however you pronounce the case, the 2018 decision in which two of you, honors, participated. Because in that case, we had the appellate rights were owned by the bankruptcy trustee. And the state court of appeal dismissed the appeal because the trustee owned the rights, the debtor didn't. And the court had no problem finding a voluntary relinquishment of the rights when the debtor filed his chapter 7. He gave up that right. And the other thing in this case, as I started to argue earlier, is the debtor here had the choice of filing chapter 11. And he could have controlled the litigation. And in this particular case, this debtor was particularly capable of doing that. He was making $140,000 a year when he filed his no asset bankruptcy. He could have controlled it. He chose not to subject his post petition earnings to his creditors and to the bankruptcy. And the trade off for that, the voluntary decision he made, was that he allowed the appeal rights to be sold and took the risk of issue preclusion. And the court had no problem holding that that was a voluntary relinquishment. And on the record before this court, the debtor also chose to stop bidding. He actually bid for these rights. Now that's in the sale order appeal and dealt with there. But he bid, I think, up to $8,000. He chose to stop bidding. He made a business decision. He made a series of business decisions that he is now dealing with. He had the opportunity, and he chose not to do it. The final point I would like to make, your honors, has to do with the relevance of the criminal guilty plea. The debtor in this case, under penalty of perjury, admitted. And it's record, excerpt of record 105.3, that he did unlawfully and fraudulently appropriate, convert, steal, and embezzle property belonging to basically the state court. Plaintiffs, some of the property listed in that document that he signed under penalty of perjury, and that his attorney signed off on, are the very same documents, the very same monies, and the very same personal property that he was found liable for conversion. That was a small fraction of what was covered by the civil judgment, correct? It was a small fraction, but given the finding of the state court that the debtor engaged in a pattern and practice that he stipulated to having taken these, I think it's relevant. It's not sufficient. It's evidence, but it's not preclusive, right, on the other items. It is evidence of the pattern and practice going to the 8-6 claim and the issue of willfulness. Well, it's evidence that you would have done really well if you'd tried it the second time. We don't want to try it the second time, your honor. Right. I think that's what it's evidence of. Who does? Yeah. All right. Thank you very much for your arguments. All right, I'm going to get this right. Ms. Monique. Thank you, your honor. I think I'll take the issues that Mr. Bedna addressed in reverse, if that's okay, starting with the criminal plea. The criminal plea actually, Judge Smith actually excluded evidence related to that because she said it wasn't relevant on our objection. Since in the complaint, Mr. Bedna's clients, the adversary complaint, he admits that none of what was pled to in the criminal matter, well, A, the restitution was paid, and B, it's not part of the civil judgment. I thought that was it. Not part of the civil judgment. I thought it was the payment of the restitution. She said that's move on, in effect. Right, and since we're only dealing with the issue of preclusion, we're not weighing evidence, it's not really relevant. In the Boots O'Glue case that Mr. Bedna also discussed, there were some seriously different facts than what we have here. For example, and I did look at this, the Ninth Circuit Court of Appeals just rendered its decision on the appeal from this court on May 1st. But in its brief decision, it highlights some of the facts, which is that the debtor had an alter ego company that did, in fact, prosecute the state court appeal all the way through and lost. Clearly, that didn't happen here, and if somebody's not in privity with their alter ego company, then who could they be in privity with? He points out that the statute, you keep taking it to privity, but we have a statute that says you can either be in what I think would be conventional privity, and I use the example of a representative of the decedent's estate. A person has died, a family member, a trusted person, that seems to be what you want here. But the statute also talks about successors in interest, and a successor in interest, couldn't that be someone who simply acquires it? Why is that? And California has a statute for everything, I know, but when they bother to put a statute in place, aren't we required to respect it? Well, I mean, the decedent example is a good example of where you would have both. Somebody who is literally the virtual representative and also the successor. I think Mr. Bidna's characterization of the Gottlieb decision is not capturing all of what the court there said, because the court emphasized in multiple different ways that there needs to be a unity of interest. So maybe you can get there as a successor, maybe you can get there in a different way, but if you don't have that unity of interest, if you're not representing the same interests, or a virtual representative as the court called it, then, you know, it just doesn't seem that, especially since there's no case actually applying the law in the way that Mr. Bidna is arguing, that that's what is meant. And it definitely doesn't square in my mind with due process. And then something else that was said, which is that in the Boots of Blue case, the trustee was standing in the shoes of the debtor when the appeal was dismissed. The trustee is very different from the appellee in this case. The trustee is the fiduciary of the estate and oftentimes will want to pick up where a debtor left off with litigation. But in this case, Judge Smith found when she sold it, I mean, $10,000 isn't exactly a lot of money. I forget what the opening bid was, but it was pretty low. She found that this was not, as my husband would say, a righteous appeal. She found that there was a very low, indeed almost no, likelihood of success. So isn't that finding, albeit in connection with the sale, something that's in the record and something we can consider here? Well, I don't know where that comes into the test for issue preclusion under California law. I think part of what makes this case complicated is that there's the bankruptcy overlay that normally the bankruptcy law overlays state law. And here we have sort of the reverse where we're looking at state law through the lens of bankruptcy law, which I don't think should necessarily be done. I agree that Judge Smith did not believe that the appeal was likely to succeed, and that was part of her decision. And while we didn't agree with that, we didn't address it on appeal because we thought our issues, our chances were better arguing the inadequacy of the price, which she said would provide a de minimis return to creditors. But I don't know if I answered Your Honor's question. No, I think it was more of an observation. It was a really, you may proceed. You have just a very few seconds. Can I jump in? I apologize, Judge Fraker, again. I'm interested in hearing your reaction, especially with what you just said regarding Judge Smith's evaluation of the merits. You know, there's a tension here obviously between the privity aspect and the public policy. Judge Taylor asked your opposing counsel about, there appears that while Judge Smith did not work through expressly, she did consider everything that had happened in this case. I want your thoughts on the public policy analysis if you could quickly. Well, I don't really, I don't think she actually gave one in the record at least. You know, anytime you're dealing with basic reclusion, of course, you know, judicial economy is at play, whether or not the judge discusses it expressly. But she really didn't say much of anything about public policy or make any findings. And I mean, to me, this case screams out for a public policy analysis. You know, I think ideally that's done by the trial court. At the same time, I mean, this court is, you know, probably issue preclusion comes up every time there's a date of hearings, I would guess. And so this court's obviously probably equally equipped to make those findings. But I think they certainly need to be made because judicial economy, according to the California Supreme Court's recent decision, that we cited, should not trump everything else, especially fairness in the policy, because integrity in the judicial system is one of the enumerated policies the Lucido court set forth. And, you know, the question here, I think, is, is what happened here fair? And I think that should be looked at from the perspective of state law, not bankruptcy law, which, you know, Pelly has argued you can send to everything that could possibly conceivably happen by filing a voluntary petition for bankruptcy relief. And I just don't think we want to go that direction. I think it'll chill, you know, people's access to the courts or desire to seek relief when they very well may need it. And I think that's all I have. Thank you. Unless I'm done on time, I have one more point. You're out of time. So I thank you for your good argument. Thank you both for your good arguments. This matter will be deemed submitted. And we appreciate your participating in what we hope to be a soon not used form of bankruptcy appellate argument. Thank you very much. Thank you, Your Honors. Call the next matter.
judges: Taylor, Faris, Spraker